UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JAN 1 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-603-GWU

WILLIAM BARNETT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Barnett

> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, William Barnett, was found by an Administrative Law Judge ALJ) to have a severe impairment due to Barrett's changes of the esophagus. (Tr. 18). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Barnett retained the residual functional capacity to perform the full range of sedentary jobs existing in the economy, and proceeded to apply Rule 201.27 of the Commissioner's Medical-Vocational Guidelines (the "grids") and, therefore, was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine if the administrative decision is supported by substantial evidence.

Mr. Barnett alleged disability due to a hiatal hernia and "eating problems" (Tr. 65), explaining at the administrative hearing that he had heartburn, reflux and diarrhea and had been diagnosed with Barrett's esophagitis (Tr. 172-3). The problem

7

made it hurt to swallow and he was fatigued due to lack of nutrition, despite drinking Ensure and protein. (Tr. 176, 178). He had been told not to lift because it would strain his neck. (Tr. 177).

Medical records are limited. In January, 2002, Mr. Barnett was admitted to the Middlesboro Appalachian Regional Hospital with a diagnosis of dysphagia (i.e., difficulty swallowing) and abdominal pain. An EGD by Dr. Robert Thomas showed only "minimal" Barrett's esophagus,[1] no obvious hiatal hernia, and no significant stricture. (Tr. 106). He recommended keeping Mr. Barnett on a proton pump inhibitor medication (Prevacid) and rechecking him in two years. (Id.). Other tests run during the hospital stay, including a CT scan of the abdomen and pelvic cavity, were unremarkable. (Tr. 107-11). He was discharged on Prevacid with instructions to "resume activity" and "resume diet." (Tr. 114).

The physician who had hospitalized Mr. Barnett, Dr. C.A. Moore, wrote a letter dated September 16, 2002 stating that he had "known him" for at least two years, and his problems were severe abdominal esophageal pain, due to severe reflux and severe esophagitis with early Barrett's changes of the lower esophagus, and weight loss secondary to these problems. (Tr. 119). He had shown minimal improvement with medication since the hospitalization and, on the latest examination on May 23,

---

[1] Barrett's esphagus is defined as a "peptic ulcer of the lower esophagus, often with stricture." Dorland's Illustrated Medical Dictionary, 27th edition, p. 1630.

8

2002, still had no major change in weight, and was unable to lift more than approximately 10 pounds without severe esophagus pain. (Id.). The remainder of his examination was normal. (Id.). He added that: "Physical labor is very difficult for this patient at this time due to the nature of the esophagitis and reflux." (Id.)

Dr. William Coble conducted a consultative physical examination on May 11, 2002, and reviewed the hospitalization records. (Tr. 120). The patient denied any nausea or vomiting, but complained of burning pain on eating, and stated that he had not been able to eat or lift anything at work since he lost body mass. (Id.). He stated that he had given up smoking but chewed tobacco three times a day. (Tr. 121). Dr. Coble's examination showed that Mr. Barnett weighed 116 pounds at a height of 69.7 inches, and his grip strength was significantly decreased; he described Mr. Barnett as "a cachectic, ill-appearing white male in no acute distress" who had no sensory or reflex deficits and no apparent difficulty moving around the room and getting on and off the examination table. (Tr. 121-2). Ranges of motion were normal. (Tr. 122). Dr. Coble diagnosed GERD with associated Barrett's esophagus, and commented that Mr. Barnett's weakness was associated with his "decreased p.o. intake." (Id.). However, he saw no evidence for any physical restriction. (Tr. 123). He suggested that the plaintiff take his medication regularly, albeit Mr. Barnett had stated it was too expensive. (Tr 122).

Barnett

A state agency physician, Dr. James Ross, reviewed the evidence at this point and determined that the plaintiff could perform a "light" level exertion, with no additional restrictions. (Tr. 124-32).

Subsequently, the plaintiff submitted some additional evidence including brief, unsigned notes from the Bell County Health Department indicating that Mr. Barnett's weight was 115 pounds on September 9, 2003 and 114 pounds on September 13, 2003. (Tr. 137). It also appears to indicate that his height was 71.5 inches, although, from comments made by the plaintiff's representative at the administrative hearing this measurement might have been taken while he was wearing shoes. (Tr. 168-9).

Finally, the plaintiff submitted a residual functional capacity assessment by Dr. Moore dated September 15, 2003 stating that he could lift only 10 pounds occasionally, could sit one hour, stand one hour, and walk one hour per eight-hour day, could never bend, squat, crawl, or climb, could only occasionally reach above shoulder level, could not use his hands or feet for pushing and pulling movements, and would have a moderate restriction on working around heights, moving machinery, extremes of temperature and humidity, driving automobile equipment, and exposure to dust, fumes, and gases. (Tr. 138). The reasons given were chronic gastric pain and, although the writing is almost illegible, lumbosacral sprain. (Id.).

10

The ALJ rejected Dr. Moore's restrictions on the grounds that no treatment records were received from him, and there was not enough evidence to consider Dr. Moore as a treating source. (Tr. 19). Moreover, the ALJ opined that the physician did not provide objective evidence to support the conclusion that Mr. Barnett was unable to sit, stand, or walk for more than one hour a day. (Id.). Although the ALJ noted that Dr. Coble's opinion was based on objective findings, she gave the plaintiff the benefit of the doubt and limited him to sedentary level exertion only. (Id.). She also noted that the plaintiff's statement that he could not afford medication was dubious in light of his statement that he chewed tobacco. (Id.).[2] See Sias v. Secretary of Health and Human Services, 861 F.2d 475, 480 (6th Cir. 1988).

While Dr. Moore's opinion as a treating source would normally be entitled to great weight, especially since it was not available to the state agency reviewer, the opinion of even a treating source must be supported by adequate signs, symptoms, and laboratory findings. Hardaway v. Secretary of Health and Human Sevices, 823 F.2d 922, 927 (6th Cir. 1987). In the present case, it is difficult to discern any longitudinal treatment of Mr. Barnett by Dr. Moore. While he apparently had the plaintiff admitted to the hospital in January, 2002, the records from that hospitalization did not support Dr. Moore's subsequent indication that Mr. Barnett

---

[2]The ALJ also found that, while Mr. Barnett may have come close, he did not meet Commissioner's Listing of Impairment Section 5.08. (Tr. 18). The plaintiff has not raised this issue on appeal.

11

Barnett

had "severe reflux and severe esophagitis" (Tr. 119), with the actual EGD report showing no specific abnormalities other than "early" Barrett's esophagus. The ALJ gave detailed, credible reasons for declining to accept the opinion of the alleged treating source, and thus the plaintiff's citation to <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541, 544 6th Cir. 2004), which concerned the rejection of a treating physician's opinion without giving specific reasons, is inapposite.

The decision will be affirmed.

This the ___11___ day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE